IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Henry L. Parker, ) | |
| ) | Civil Action No. 6:07-3274-PMD-WMC |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Michael J. Astrue, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for disability insurance benefits under Title II of the Social Security Act.

**ADMINISTRATIVE PROCEEDINGS**

The plaintiff filed an application for disability insurance benefits on September 13, 2004, alleging that he became unable to work on March 21, 2002.[2] The application was denied initially and on reconsideration by the Social Security Administration.

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

[2] In a prior proceeding, by decision dated May 14, 2004, an ALJ found that the plaintiff was not disabled. The plaintiff apparently took no further action on that application.

On August 26, 2005, the plaintiff requested a hearing. The administrative law judge (ALJ), before whom the plaintiff, his attorney and a vocational expert appeared on October 6, 2006, considered the case *de novo*, and on October 24, 2006,[3] found that the plaintiff was not under a disability as defined in the Social Security Act, as amended. The administrative law judge's finding became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on June 8, 2007. The plaintiff then filed this action for judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the administrative law judge:

> (1) The claimant meets the insured status requirements of the Social Security Act through June 30, 2010.
>
> (2) The claimant has not engaged in substantial gainful activity since March 21, 2002, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq*.).
>
> (3) The claimant has the following severe impairment: degenerative disc disease of the lumbar and cervical spines (20 CFR 404.1520(c)).
>
> (4) The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> (5) After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform the exertional requirements of medium work, that is lifting and carrying up to fifty pounds occasionally and twenty-five pounds frequently; standing and walking throughout the work day; and performing other physical work activities without limitation. The claimant's pain further restricts him to simple, routine unskilled work.
>
> (6) The claimant is capable of performing past relevant work as a poultry hanger. This work does not require the

---

[3]An amended decision was filed by the ALJ on April 17, 2007, which simply included four pages which were omitted in the original hearing decision.

>performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
>
>(7) The claimant has not been under a "disability," as defined in the Social Security Act, from March 21, 2002, through the date of this decision (20 CFR 404.1520(f)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

>the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. §404.1503(a). *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **EVIDENCE PRESENTED**

The plaintiff alleges disability since March 21, 2002, due to limitations caused by back pain, neck problems, bulging discs, and depression (Tr. 105-08, 139). The plaintiff was 52 years old on the date he alleged he became disabled and 55 years old on the date of the ALJ's decision (Tr. 105). He has a high school education and past work experience as a poultry hanger (Tr. 118, 124).

The record reveals that the plaintiff was seen at the Sumter Health Center (SHC) with complaints of back pain and forgetfulness in July 2003. He said that medication helped his back pain, but made him sleepy and forgetful. He reported that he did not take some medications because of inconvenient side effects and did not take medication for high blood pressure because he forgot. The plaintiff's examination was normal and MRIs were ordered. An MRI of the head was normal, and an MRI of the lumbar spine revealed degenerative changes at the L4-L5 (Tr. 201-206).

SHC stopped treating the plaintiff for back pain in early 2004, after he was referred to a specialist (Tr. 196-98), but he was seen at SHC eight times over the next three years for follow-up care for hypertension and other issues, such as hypolakemia and Hepatitis C (Tr. 191-200, 243-48). In September 2006, the SHC physician noted that the plaintiff's hypertension was fairly well controlled and relieved by medication. In addition, the plaintiff was able to walk without use of an assistive device (Tr. 243-44).

5

Dr. P. Douglas deHoll began treating the plaintiff's back pain in November 2004. The plaintiff complained of "significant back pain" since June 2003. He said his pain was mostly in the lower back, occasionally in the buttock, and never in the thigh. He stated that his pain was exacerbated by walking, stepping, bending, and lifting; was alleviated with lying flat; and was moderately improved with ibuprofen. The plaintiff was able to heel-toe walk, and straight leg raising testing was negative. He had moderate lumbar paraspinal tenderness and normal range of motion. An MRI revealed fairly advanced degenerative disc disease at L4-5 and LS-S1, but no nerve root impingement. Dr. deHoll recommended an aggressive exercise program with a physical therapist and a home exercise program (Tr. 189-90).

A month later, the plaintiff reported that physical therapy had not succeeded (Tr. 186). Dr. deHoll ordered a functional capacity evaluation, which took place in June 2005. The evaluation indicated the plaintiff could perform sedentary to light work. The evaluator noted that the plaintiff demonstrated self-limiting behaviors and said "tomorrow I will pay for this" (Tr. 180-84). A month later, Dr. deHoll reviewed the evaluation and assigned the plaintiff a 17% permanent whole body impairment rating (Tr. 185).

The plaintiff sought mental health treatment in August 2004, complaining of physical impairments, stress, and depression. An examination revealed the plaintiff was fully oriented and that he had no delusions or hallucinations. His speech was clear and his memory was good. The diagnosis was depressive disorder and the plaintiff was assigned a Global Assessment of Functioning (GAF) in the 60's. While the first number "6" is clear, the second number is unclear[4] (Tr. 168, 241).

---

[4] A GAF score of 61-70 indicates that a person has "some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally function[s] pretty well, [and] has some meaningful interpersonal relationships." Diagnostic & Statistical Manual of Mental Disorders-Text Revision (DSM-IV-TR) (2000) (Stat!Ref Library CD-ROM, First Quarter 2008).

6

The plaintiff received intermittent mental health care over the next two years. During that time, the plaintiff was prescribed an anti-depressant and reported that his depression seemed improved (Tr. 230-39).

Dr. Elizabeth Dickinson examined the plaintiff at the request of the Commissioner in January 2005. The plaintiff gave a "hesitant and rather vague description of low back pain." He claimed his back pain prevented him from working, that physical therapy worsened his pain, and that medication did not relieve his pain. The plaintiff told Dr. Dickinson that bending, lifting, sitting, walking, twisting, and any other movement aggravated his pain. He said he had no symptoms in his arms or legs. The plaintiff said that he walked with a cane when he was out of the house. Dr. Dickinson noted that the plaintiff walked into the office without use of a cane and no evidence of a risk of falling. On examination, the plaintiff resisted movement with extreme muscular guarding and hesitance. There was no palpable crepitus and no involuntary muscular spasm. At other times, the plaintiff moved his spine freely with no apparent pain. He had full range of motion in his shoulder, but was reluctant to perform all the movements, kept his eyes closed, and moaned as if in pain. Straight leg testing was negative. His gait was normal, with no loss of balance, but it was exceptionally slow. When he used the cane, there was no evidence of a need to lean or depend on the cane. Neurological examination was normal. Psychological evaluation showed "depressed-appearing faces" and a flattened affect with exaggerated pain complaints and behaviors (Tr. 170-74).

Dr. Dickinson noted that an MRI confirmed that the plaintiff had degenerative joint disease with some early degenerative disk disease in the lumbar spine with complaints of pain, but no distinct measurable radiculopathy or muscular atrophy; complaints of neck pain with a variable degree of range of motion; hypertension under good control; and depression and exaggerated pain complaints (Tr. 173, 228). She noted that the plaintiff did

not seem to be a candidate for intervention. She thought there was a degree of secondary gain in the plaintiff's behavior patterns:

> Mr. Parker does not seem to be a candidate for any further intervention, as far as his back is concerned. I think there is a considerable amount of resistance to getting better. I must believe that there is a degree of secondary gain in his current behavior patterns.

(Tr. 173).

On February 9, 2005, the plaintiff underwent a mental evaluation by psychiatrist Subba Rao, M.D.. Dr. Rao reported that the plaintiff's mood and affect were depressed, his thought processes were linear, and his insight and judgment were fair. A mini-mental status examination revealed the plaintiff was alert and oriented and was able to perform almost all the tasks correctly. He was independent with household chores, meal preparation, money management, and self-care, and was able to shop. Concentration and reasoning were normal. Dr. Rao's impression was depression due to a general medical condition and pain disorder with both psychological factors and general medical condition. He thought the plaintiff's primary limitation was physical (Tr. 175-79).

A State agency physician reviewed the plaintiff's medical records in July 2005, finding that there were no objective medical findings of significance that the plaintiff had a severe physical impairment. The physician did note that there was evidence of early degenerative disc disease of the lumbar spine, but that a recent consultative examination revealed no functional limitations and that the plaintiff exaggerated pain in neck and low back. He also noted that the plaintiff's hypertension was controlled by medication (Tr. 211, 227).

A State agency psychologist who reviewed the plaintiff's medical records concluded that the plaintiff's mental impairment was not severe, as it caused mild restrictions of activities of daily living; mild difficulties in maintaining social functioning; mild

difficulties in maintaining concentration, persistence, and pace; and no episodes of decompensation of extended duration (Tr. 211, 213, 216, 223).

At the hearing, the plaintiff testified that he was 55 years old and had a high school education (Tr. 48-49, 55). He said that he lived in a mobile home (Tr. 49). He testified that one of his past jobs was as a poultry hanger, which he described as "light duty." He said he had to leave the job because "it got too fast" (Tr. 50). He also complained that he had trouble because the chickens got bigger (Tr. 50).

The plaintiff said that his impairments included degenerative disc disease, joint disease, hypertension, Hepatitis C, and gallstones (Tr. 53). He indicated that his physician at SHC told him he should not be working (Tr. 54). He said his hypertension did not stop him from working (Tr. 65). He claimed his depression affected his sleep and caused mood swings (Tr. 68). He claimed the depression adversely affected his concentration and memory (Tr. 68). He said that he became tired during the day, and attributed the fatigue to Hepatitis C (Tr. 70).

The plaintiff said that he had trouble moving his neck (Tr. 60). He claimed he had trouble lifting a gallon of milk (Tr. 61). He claimed he could stand 10 minutes at one time (Tr. 62). He said that he needed to rest after walking short distances (Tr. 62). He said he had to continually change positions when he sat and could sit for 15 minutes at one time (Tr. 63). The plaintiff said he drove when required, for example, when he went shopping (Tr. 56).

Mary Cornelius, a vocational expert, also testified at the hearing (Tr. 75-87). Ms. Cornelius testified that one of the plaintiff's past jobs was as a poultry hanger which, as performed in the general economy, required medium exertion and was unskilled and, as described by the plaintiff, required light exertion and was unskilled (Tr. 76).

**ANALYSIS**

The plaintiff alleges disability since March 21, 2002, at which time he was 52 years old, due to pain from multiple symptoms including degenerative disc disease, joint disease, hypertension, Hepatitis C, gallstones, and major depressive order (Tr. 53). The ALJ found that the plaintiff retained the residual functional capacity ("RFC") to perform unskilled medium work. The ALJ went on to find that the plaintiff could perform his past work as a poultry hanger as it was actually and generally performed (Tr. 24). The plaintiff argues that the ALJ erred by (1) failing to comply with SSR 96-8p in his RFC finding; (2) failing to properly assess his credibility; and (3) failing to properly assess his ability to perform his past relevant work.

*Residual Functional Capacity*

The plaintiff argues that the ALJ erred by failing to properly assess his RFC. In a disability case, the combined effect of all the claimant's impairments must be considered without regard to whether any such impairment if considered separately would be sufficiently disabling. Where there is a combination of impairments, the issue "is not only the existence of the problems, but also the degree of their severity, and whether, together, they impaired the claimant's 'ability to engage in substantial gainful activity.'" *Oppenheim v. Finch*, 495 F.2d 396, 398 (4th Cir. 1974). The ailments should not be fractionalized and considered in isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity. *Id.* The cumulative or synergistic effect of the various impairments on the claimant's ability to work must be analyzed. *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

The ALJ found the plaintiff suffered from the severe impairment of degenerative disc disease of the lumbar and cervical spines (Tr. 19). The plaintiff first contends that the ALJ erred by not finding that his hepatitis, hypertension, and depression

were severe. An impairment is severe when it is more than a slight abnormality that has more than a minimal effect on the ability to do basic work activities. *See* Social Security Ruling ("SSR") 96-3p; 20 C.F.R. §§ 404.1520(a), 404.1521; *see also, e.g., Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984) (citations and internal punctuation omitted).

The plaintiff's argument that the ALJ should have found that his hypertension and hepatitis were severe impairments fails. The plaintiff was able to control his hypertension with medication (Tr. 19), and the medical records do not establish any limitations from the hepatitis, but instead show that the condition was stable (Tr. 243, 248).

However, this court finds that the ALJ erred in finding that the plaintiff's depression was not a severe impairment. Specifically, the plaintiff contends that his Global Assessment of Functioning ("GAF") scores were indicative of a severe impairment. The plaintiff sought mental health treatment in August 2004, complaining of physical impairments, stress, and depression. The diagnosis was depressive disorder and the plaintiff was assigned a GAF score in the 60s. As noted above, while the first number "6" is clear, the handwriting on the medical note is unclear as to the second number[5] (Tr. 168, 241). On February 9, 2005, the plaintiff underwent a mental evaluation by psychiatrist Subba Rao, M.D. Dr. Rao reported that the plaintiff's mood and affect were depressed, his thought processes were linear, and his insight and judgment were fair. The plaintiff was currently being treated by Dr. King at the mental health center, and he was taking Zoloft. Dr. Rao's impression was depression due to a general medical condition and pain disorder with both psychological factors and general medical condition. Dr. Rao assessed the

---

[5] A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., no friends, unable to keep a job). A GAF score of 61-70 indicates that a person has "some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally function[s] pretty well, [and] has some meaningful interpersonal relationships." Diagnostic & Statistical Manual of Mental Disorders-Text Revision (DSM-IV-TR) (2000) (Stat!Ref Library CD-ROM, First Quarter 2008).

plaintiff with a GAF score of 55 (Tr. 175-79). Based upon the foregoing, this court finds that the ALJ erred in finding that the plaintiff's depression was not a severe impairment. Upon remand, the ALJ should be instructed to consider all of the plaintiff's impairments – including his depression and his nonsevere impairments – in making the RFC assessment.

The ALJ found that the plaintiff was restricted to unskilled medium work activity (Tr. 20).

> The Residual Functional Capacity ("RFC") assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work- related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. . . .

SSR 96-8p, 1996 WL 374184, *7.

As argued by the plaintiff, he is of advanced age with back and neck impairments documented by objective findings. The ALJ's decision fails to explain how someone such as the plaintiff could still perform the relatively strenuous requirements of full-time medium work despite this condition. While the ALJ summarized some of the medical evidence, his RFC assessment is simply conclusory and does not contain any rationale or reference to the supporting evidence, as required by SSR 96-8p. Social Security Ruling 96-8p requires that the RFC assessment "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." As noted by the plaintiff, the RFC assessment is particularly important in this case because under the medical-vocational guidelines, even if he can perform light work activity, the

plaintiff would be considered disabled if a finding is made that he is not able to perform his past relevant work (pl. brief 26). Further, as argued by the plaintiff, the ALJ appears to have ignored certain evidence supportive of his claim. The ALJ does not mention the interpretation of the plaintiff's MRI by Dr. deHoll, which states that the MRI revealed advanced degenerative disc disease at L4-L5 and L5-S1 (Tr. 189-90). The ALJ also appears to have disregarded the finding in the functional capacity evaluation ordered by Dr. deHoll that the plaintiff could perform sedentary to light work (Tr. 180-84). Upon remand, the ALJ should be instructed to make an RFC finding in accordance with the above-stated regulations.

### *Credibility*

The plaintiff also contends that the ALJ failed to properly assess his credibility. The ALJ found as follows:

> After considering the evidence of record, I find that the claimant's medically determinable impairment could reasonably be expected to produce some of the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not substantiated by the total evidence of record and are not credible.

(Tr. 20).

A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§404.1529(c)(4) and 416.929(c)(4). Furthermore, "a formalistic factor-by-factor recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence [he] relies on in evaluating the claimant's credibility." *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001). Social Security Ruling 96-7p states that the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." Furthermore, it "must

be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." SSR 96-7p, 1996 WL 374186, *4.

In addition to the objective medical evidence, the factors to be considered by an ALJ when assessing the credibility of an individual's statements include the following:

(1) the individual's daily activities;

(2) the location, duration, frequency, and intensity of the individual's pain or other symptoms;

(3) factors that precipitate and aggravate the symptoms;

(4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

(5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

(6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

(7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, *3.

In finding the plaintiff's subjective complaints "not credible," the ALJ fully considered the evidence in the record as a whole and tied the limitations he found to those contained in the record. The ALJ explained "[t]he clinical picture reflected in th[e] treatment notes show few objective findings to support the degree of limitations asserted by [the plaintiff]" (Tr. 22). He went on to support his conclusion. He noted that the plaintiff had intermittent complaints over time and there were lengthy periods when he did not seek treatment or medications (Tr. 22). This assertion is supported by the record. For example, the plaintiff sought medical treatment for back pain from SHC only twice in July and

14

December 2004 and from Dr. deHoll once in November 2004 (Tr. 198-201). After December 2004, the plaintiff sought treatment from SHC a total of only eight times over a three-year period (Tr. 191-200, 243-48). The ALJ also noted that Dr. Dickinson thought the plaintiff exaggerated his complaints and noted the plaintiff demonstrated inconsistent behavior (Tr. 22; *see* Tr. 171-72, 173). In addition, the ALJ noted that the plaintiff said he used a cane, but it was not prescribed by a physician, and Dr. Dickinson thought there was no basis for using a cane (Tr. 171). In September 2006, an SHC physician noted the plaintiff was able to walk without an assistive device (Tr. 244). The ALJ also noted that the plaintiff did not use medications as recommended by his physicians (Tr. 22).

In assessing the plaintiff's credibility, the ALJ also stated that the plaintiff's testimony regarding his daily activities was inconsistent with the evidence in the record (Tr. 22). As the ALJ noted, the plaintiff testified that he had almost no activities (Tr. 22). However, these claims were inconsistent with his testimony that he drove, fixed light meals, performed household chores, and went to church (Tr. 56, 149-50).

This court agrees with the defendant that the ALJ properly evaluated the credibility of the plaintiff's subjective complaints as his opinion contained specific reasons for the finding on credibility, supported by the evidence in the case record.

*Past Relevant Work*

The plaintiff argues that the ALJ failed to perform a proper analysis of his ability to perform his past relevant work. Social Security Rule 82-62 provides in pertinent part:

> The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work. Determination of the claimant's ability to do PRW requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s)

> for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the *Dictionary of Occupational Titles*, etc., on the requirements of the work as generally performed in the economy.
>
> The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit.

SSR 82-62, 1982 WL 31386, *3 (1982).

The ALJ determined that the plaintiff could return to his former occupation as a "poultry hanger" as the plaintiff actually performed the job and as it is generally performed in the national economy (Tr. 23). Vocational testimony was provided that indicated the job was generally performed at the medium exertional level. The vocational expert further testified that, as the plaintiff described his work, he performed it at the light level of exertion (Tr. 76). The plaintiff asserts the ALJ committed legal error in making his determination that he could still perform this past work.

Substantial evidence does not support the ALJ's finding that the plaintiff's past relevant work was light work as he actually performed it. At the hearing, the plaintiff described on a few occasions why he could not return to his poultry hanger job (Tr. 50, 57-58). He testified that he could no longer perform the job in question because "the chicken got bigger and the line moved faster" (Tr. 50). Later, the plaintiff indicated that he could not perform the job because it involved standing all day and "moving from left to right" (Tr. 57). Finally, the plaintiff indicated that "[The chicken] was in ice and they, they're called big, they're called big bird. If you see how the chicken legs look now they are a big bird. And I couldn't – and the line moved fast and that was like through here and I, I can't imagine

16

going and doing that for two hours. I, I can't, there's no way I can possibly do that" (Tr. 58). The assessment that the plaintiff performed his work at the light level was apparently based on the plaintiff's self-description, not of the actual physical requirements of the job, but of his statement in the hearing that he started performing the job when he was put on "light duty" (Tr. 50, 57). He was never asked what he meant by this, or what the actual physical requirements of the job were, other than his indication that he stood and turned back and forth all day and had to operate at a fast pace. It does not appear that the ALJ considered the plaintiff's stated reasons for being unable to perform his past work, as required by SSR 82-62. Further, the record shows that the work history report prepared by the plaintiff states that the job as he actually performed it was above the medium level of work activity (Tr. 134). The plaintiff indicated that he was required to lift and carry 70-pound tubs of chicken, well above the 20-pound limit of light work and even the 50-pound limit of medium work.

The ALJ failed, as required by SSR 82-62, to make "finding of fact as to the physical and mental demands of the past job/occupation." He observed that the plaintiff described the past work as light (incorrectly, in the sense of what "light" means in the context of a Social Security disability claim), then noted that the vocational expert mentions the DOT describes the job as medium, without making any specific findings of the requirements of this work himself. SSR 82-62 requires specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work. The fourth step of the sequential analysis and the regulations dictate a "particularized inquiry" as to the physical and mental demands of a claimant's past work and require the decisionmaker to determine the claimant's RFC for work he or she has done in the past. *Rams v. Chater*, 989 F.Supp 309, 318 (D. Mass. 1997) ("A determination of "medium work," therefore, is not enough to support a finding that plaintiff could perform her past job.") (citing 20 C.F.R. § 404.1520(e))

Based upon the foregoing, upon remand, the ALJ should be instructed to consider, in accordance with the above-cited law, whether the plaintiff can return to his past relevant work.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, this court recommends that the Commissioner's decision be reversed under sentence four of 42 U.S.C. §405(g), with a remand of the cause to the Commissioner for further proceedings as discussed above.

> s/William M. Catoe
> United States Magistrate Judge

December 12, 2008

Greenville, South Carolina